**Docket Entry Nos. 39, 40**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE DRENCKHAHN, | )    Case No. CV 08-1408 JHN (SSx) |
|          Plaintiff, | ) |
| vs. | )    ORDER: (1) GRANTING |
| | )    PLAINTIFF'S MOTION FOR FLSA |
| COSTCO WHOLESALE | )    COLLECTIVE ACTION |
| CORPORATION, | )    CERTIFICATION PURSUANT TO |
| | )    29 U.S.C. § 216(b) AND (2) DENYING |
|          Defendant. | )    PLAINTIFF'S MOTION FOR CLASS |
| | )    CERTIFICATION PURSUANT TO |
| | )    F.R.C.P. RULE 23 |
| | ) |
| | ) |

The matter is before the Court on Plaintiff Jesse Drenckhahn's ("Plaintiff") Motion for Certification of Collective Action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) ("§ 216(b) Motion"),[1] and Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule__") ("Rule 23 Motion").[2]  The Court deemed the motions appropriate for decision without oral argument pursuant to Rule 78 and Local Rule 7-15.  Accordingly, the motions were removed from the Court's calendar.  Having considered the papers submitted by the parties, the Court grants the § 216(b) Motion and denies the Rule 23 Motion.

---

[1]  Docket No. 39.

[2]  Docket No. 40.

# I. **FACTUAL BACKGROUND**

Plaintiff was employed by Defendant Costco Wholesale Corporation ("Costco") from approximately November 1996 to 2006. (Compl. ¶ 13.) Between February 2002 and late 2005, he held the position of Receiving Manager at stores in Culver City and Hawthorne, California. (Id.)[3] During this period, Costco allegedly misclassified Plaintiff as "exempt" from state overtime laws "to avoid paying overtime wages and other benefits." (Id. at ¶ 7; see also, ¶¶ 19-20.) Specifically, Plaintiff alleges that his "managerial" duties comprised a small portion of his total work time, which often totaled forty-five to fifty hours per week. (Id. at ¶¶ 21-22.) Plaintiff further alleges that he was neither afforded overtime pay nor adequate meal and rest breaks, although he was often forced to work at least ten, and often as many as twelve, hours per day. (Id. at ¶¶ 23-24, 54.)

In December 2007, Plaintiff filed this putative class action in the Los Angeles County Superior Court alleging: (1) failure to pay overtime compensation in violation of Cal. Lab. Code §§ 510, 515, 1194 and 1198; (2) failure to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226(e); (3) failure to pay overtime compensation in violation of the FLSA; (4) failure to provide adequate meal periods in violation of Cal. Lab. Code § 226.7; (5) failure to provide adequate rest periods in violation of Cal. Lab. Code § 226.7; (6) "continuing wages" due to Costco's failure to pay unpaid wages upon termination (Cal. Lab. Code § 203); and (7) violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

Plaintiff initially sought relief on behalf of himself and a putative class of "[a]ll persons who, at any time during the period from May 1999 to the present, were employed at a Costco warehouse store located in the State of California as a

---

[3] Plaintiff worked at the Culver City store from February 2002 until August 2003, when he was transferred to the Hawthorne store. (Compl. ¶ 13.)

1    Receiving Manager." (Id. at ¶ 32.)

2        In February 2008, Costco removed the action to this Court. Thereafter, Costco

3    filed a motion to dismiss or strike. The motions were granted in part and denied in

4    part. The Court dismissed the second cause of action with prejudice. The Court also

5    granted Costco's motion to strike the allegations pertaining to: (a) a class period

6    commencing in May 1999; (b) four year statutes of limitations on Plaintiff's first and

7    sixth causes of action; and (c) Costco's failure to provide itemized wage statements

8    and maintain payroll records as basis for Plaintiff's seventh (UCL) cause of action.[4]

9        Plaintiff now moves to certify a collective action with respect to the FLSA

10   claim and a Rule 23 class action for the state law claims.

11                              **II. ANALYSIS**

12       **A.    Plaintiff's § 216(b) Motion Is Granted.**

13       Section 216(b) provides that one or more employees may bring a collective

14   action "on behalf of himself or themselves and other employees similarly situated."

15   29 U.S.C. § 216(b) (emphasis added). Section 216(b) also provides that no

16   employee shall be a party plaintiff to a collective action unless the employee opts-in

17   by filing a written consent with the court. Id. If an employee does not opt-in, then

18   that employee is not bound by the outcome of the collective action. Edwards v. City

19   of Long Beach, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006).

20       Generally, courts have discretion in determining whether certification of an

21   FLSA collective action is appropriate. Id. If the named plaintiffs are found to be

22   "similarly situated" to the proposed collective action group, the court may authorize

23   the named § 216(b) plaintiffs to send notice to all potential members, and may set

24   a deadline for those plaintiffs to opt-in to the suit. Id.

25       "The FLSA does not define the term 'similarly situated,' and the Ninth Circuit

26   Court of Appeals has not construed it." Singleton v. Adick, 2009 U.S. Dist. LEXIS

27   _____

28       [4] Docket No. 18.

                                    3

1   108817, at *10 (D. Ariz. Nov. 2, 2009) (internal quotations omitted).  Nonetheless,

2   in evaluating whether the plaintiffs are "similarly situated," a majority of district

3   courts, including those in the Ninth Circuit, employ a two-tiered process.  Edwards,

4   467 F. Supp. 2d at 990 ("[T]he Court follows the majority approach and applies a

5   two-step approach for determining whether certification of a § 216(b) collective

6   action is appropriate."); Leuthold v. Destination Am., 224 F.R.D. 462, 467 (N.D.

7   Cal. 2004) ("The court proceeds under the two-tiered analysis, given that the

8   majority of courts have adopted it."); Delgado v. Ortho-McNeil, Inc., 2007 U.S. Dist.

9   LEXIS 74731, at *2-3 (C.D. Cal. Aug. 6, 2007) ("In determining whether employees

10  are similarly situated, courts have typically proceeded on an ad hoc case-by-case

11  basis utilizing a two-stage inquiry.")

12        Under the two-step approach, the first step is for the court to decide, "based

13  primarily on the pleadings and any affidavits submitted by the parties, whether the

14  potential class should be given notice of the action."  Leuthold, 224 F.R.D. at 467;

15  see also, Edwards, 467 F. Supp. 2d at 990.  In doing so, a court only requires

16  "substantial allegations that the putative class members were together the victims of

17  a single decision, policy, or plan."  Thiessen v. GE Capital Corp., 267 F.3d 1095,

18  1102 (10th Cir. 2001).  Due to the limited amount of evidence generally available

19  to the court at this stage, "this determination is usually made under a fairly lenient

20  standard."  Edwards, 467 F. Supp. 2d at 990 (internal quotations omitted).  At the

21  notice stage, conditional class certification is commonly granted.  Id.  A plaintiff

22  only needs to show that his position is similar, not identical to the positions held by

23  the putative class members.  Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir.

24  1996) (internal citations omitted); see also, Edwards, 467 F. Supp. 2d at 990.

25        Plaintiffs bear the burden of showing that the proposed lead plaintiffs and the

26  proposed collective action group are "similarly situated."  Edwards, 467 F. Supp. 2d

27  at 990.  "After a plaintiff has made an initial showing that the proposed class consists

28  of similarly situated individuals and the class is conditionally certified, the court

directs the distribution of notice to potential class members." <u>Delgado</u>, 2007 U.S. Dist. LEXIS 74731, at *3.

The second step takes place after discovery is complete and the case is ready for trial. <u>Edwards</u>, 467 F. Supp. 2d at 990 n.1. At that stage, the defendant may move to decertify the class. <u>Id.</u> In determining whether to decertify, courts must examine the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations. <u>Id.</u> (citations omitted). If the court finds that the putative class members are not similarly situated, the court may decertify the class, and dismiss the opt-in plaintiffs without prejudice. <u>Id.</u> "If, on the other hand, the court finds that the putative class members are 'similarly situated', it permits the case to go to trial as a class action." <u>Kane v. Gage Merch. Servs.</u>, 138 F. Supp. 2d 212, 214 (D. Mass. 2001).

Here, conditional certification of a § 216(b) collective action is appropriate for the purpose of giving notice to the prospective class. At this stage of the proceeding, Plaintiff's burden is light, and the allegations in the Complaint, coupled with Plaintiff's supporting papers, show that Plaintiff and other receiving managers employed by Costco were subjected to a common unlawful policy or practice. Plaintiff alleges that Costco improperly classified Plaintiff and other members of the proposed collective action as exempt "to avoid paying overtime wages and other benefits." (Compl. ¶ 71.) Plaintiff further alleges that the receiving managers' "managerial" duties comprised a small portion of their total work time, which often totaled forty-five to fifty hours per week. (<u>Id.</u> at ¶¶ 21-22.) Moreover, Plaintiff alleges that they were neither afforded overtime pay nor adequate meal and rest breaks, although they were often forced to work at least ten, and often as many as twelve, hours per day. (<u>Id.</u> at ¶¶ 23-24, 54.)

Plaintiff's papers support his claim that he and other receiving managers are "similarly situated." First, Plaintiff presented evidence showing that they were

victims of a single policy which improperly classified them as "exempt" even though the bulk of their time were spent on non-managerial work.  In a typical nine-hour shift, receiving managers were expected to assist in non-managerial tasks, including, physically reviewing the inventory from the previous day; segregating items for salvage or disposal; physically transporting items to the store's member pick up area; and most importantly, counting the actual merchandise.  (Decl. of Harris in Supp. of Mots. ("First Harris Decl."), Exh. 27 [Richard Shawn Parks Dep.]   at 89:14-22 [physically reviewing the inventory from previous day]; 94 [segregating items for salvage or disposal]; 24 [physically transporting items to the store's member pick up area]; 122-23 [double receiving and ensuring the security of jewelry, UPS, FedEx, high-volume, high-theft potential items]; 133-34 [double receiving to verify the initial count conducted by nonexempt receiving clerks]; 156-57 [receiving of shipment to help the nonexempt receiving secretary in times of heavy work load].)

Plaintiff has also presented evidence showing that they were subjected to a policy which required them not to exceed yearly departmental budgets, thereby forcing them to perform a significant amount of nonexempt duties.  (First Harris Decl., Exh. 27 at 169, 173 [discussing Costco's expectations with regard to maintaining departmental budget]; 33 [suggesting that staying within the budget is one of the variables considered when deciding whether to promote receiving managers]; see also, First Harris Decl., Exh. 26 [Jesse Aaron Riva Drenckhahn Dep.] at 120:8-9 [explaining that "You were given a budget.  You stuck by that budget, and that's just the way things went"].)  Moreover, Plaintiff has presented evidence showing that because they were classified as "exempt" executives, Costco never paid any receiving managers overtime compensation despite its policy of requiring them to work forty-five to fifty hours per week.  (First Harris Decl., Exh. 27 at 16:14-15 [explaining that Costco expects receiving managers to work forty-five to fifty hours, five days a week]; 98:6-9 [explaining that receiving managers are typically expected to work from 4 a.m. to 1 p.m.].)

Costco argues that at even at the notice stage, Plaintiff must show that other individuals are interested in pursuing a collective action.  (§ 216(b) Opp'n at 3-4, 24.)  This proposition has been previously rejected by a court in the Central District. In <u>Delgado</u>, 2007 U.S. Dist. LEXIS 74731, at *4-5, Judge Carney observed:

> Relying on case law from the Eleventh Circuit [i.e., <u>Dybach v. Florida Dep't of Corr.</u>, 942 F.2d 1562 (11th Cir. 1991)], Defendants argue that conditional certification is not available unless a plaintiff makes an affirmative showing that there are other individuals who desire to opt in to the class.  However, this additional requirement at the notice stage has almost never been applied outside of the Eleventh Circuit, and has never been applied in the Ninth Circuit.  Indeed, at least one district court has identified the language in <u>Dybach</u> as "dicta" and criticized it for "conflict[ing] with [the] United States Supreme Court's position that the [FLSA] should be liberally 'applied to the furthest reaches consistent with congressional direction.'"  The <u>Dybach</u> court provided no explanation for requiring plaintiffs to show that other class members desire to opt in, nor does the County indicate why this Court should adopt such a rule. The Court finds the <u>Dybach</u> rule inappropriate at the "notice stage."  Conditional certification at this stage is designed to provide notice to potential plaintiffs specifically because they might not yet be informed of the action or their ability to participate in it. Accordingly, the Court will not require Plaintiffs to demonstrate at this stage that other sales representatives . . . seek to participate in this action.

<u>Delgado</u>, 2007 U.S. Dist. LEXIS 74731, at *4-5 (citations omitted); <u>see</u> <u>also</u>, <u>Reab v. Elec. Arts, Inc.</u>, 214 F.R.D. 623, 629 (D. Colo. 2002) ("The cited language in <u>Dybach</u> is dicta."); <u>but see</u>,  <u>Silverman v. SmithKline Beecham Corp.</u>, 2007 WL 6344674, at *2 (C.D. Cal. Oct. 15, 2007) (adopting the <u>Dybach</u> rule).[5]  The Court declines to adopt the <u>Dybach</u> rule and agrees with the reasoning of the court in <u>Delgado</u>.  Accordingly, the Court will not require Plaintiff to show at this stage that

---

[5]  Other courts have recognized that requiring named plaintiffs to proffer evidence that others desire to opt-in to a § 216(b) conditional class before sending notice to potential class members puts the named plaintiff in the "chicken and egg limbo."  <u>See</u> <u>e.g.</u>, <u>Sperling v. Hoffman-La Roche, Inc.</u>, 118 F.R.D. 392, 406 (D.N.J. 1988); <u>Severtson v. Phillips Beverage Co.</u>, 137 F.R.D. 264, 267 (D. Minn. 1991).

7

1    other former Costco employees seek to join the collective action.[6]

2         Costco also argues that conditional certification is improper because Plaintiff

3    has not argued a lack of information or inability to contact class members in the

4    absence of court support.  (§ 216(b) Opp'n at 4 (citing Michaelson v. Arrow Transp.

5    Co., 1997 U.S. Dist. LEXIS 23665, at *3 (D. Or. June 6, 1997).)  In Michaelson, the

6    court denied the § 216(b) motion in part because plaintiff failed to allege inability

7    to contact class members in the absence of court support.  However, the Michaelson

8    court did not cite any authority for this additional requirement.  More importantly,

9    in reaching its ultimate decision, the Michaelson court relied on Dybach, which the

10   Court declines to follow.

11         Next, Costco argues that conditionally certifying a collective action would not

13         [6] Costco also cites Pfohl v. Farmers Ins. Group, 2004 U.S. Dist. LEXIS 6447,
14   at *31 (C.D. Cal. Mar. 1, 2004), for the proposition that Plaintiff must provide
15   evidence that other employees desire to join the lawsuit before a collective action can
     be certified.  (§ 216(b) Opp'n at 3 n.4.)  Costco's reliance on Pfohl is misplaced
16   because the court in Pfohl did not deny the § 216(b) motion due to the plaintiff's
     failure to show that other employees were interested in joining the action.  Pfohl, 2004
17   U.S. Dist. LEXIS 6447, at *31.  Rather, the court denied the § 216(b) motion in part
18   because the plaintiff "has engaged in solicitation and has failed to come up with
     significant numbers of allegedly similarly situated employees who are likely to assert
19   similar claims."   Id.   Here, Plaintiff submits that no solicitation has occurred.
20   Accordingly, Pfohl is distinguishable.
21         Costco also relies on Smith v. T-Mobile USA, Inc., 2007 WL 2385131 (C.D.
     Cal. Aug. 15, 2007) and Gil v. Solectron Corp., 2009 WL 88346 (N.D.Cal. Jan. 9,
22   2009) for the same proposition.  (§ 216(b) Opp'n at 4 n.7.)  Smith is factually
23   distinguishable because plaintiffs in that action have engaged in solicitation and
     submitted thirty-three declarations that served as bases for the court's denial of their
24   § 216(b) motion.  2007 WL 2385131, at *4.  As previously discussed, no solicitation
25   has occurred in this case.  Moreover, Gil simply cannot be read to require that an
     FLSA plaintiff must provide evidence that other employees desire to join the lawsuit
26   before a collective action can be certified.  2009 WL 88346, at *3.  In Gil, plaintiffs
27   offered twenty-six declarations of present and former employees in support of their
     § 216(b) motion, but Gil does not stand for the proposition that such declarations were
28   required to obtain certification.

1   assist Plaintiff in identifying prospective collective action members, as the deadline

2   for class discovery has passed on May 30, 2009.  (§ 216(b) Opp'n at 4.)  The crux

3   of Costco's argument is that the Court should bypass the notice stage and proceed

4   to the more rigorous second step– substantive analysis of whether the proposed class

5   members are similarly situated– because class discovery is complete and the Court

6   has considerable evidence before it.  (Id. at 6-7.)  Costco's arguments lack merit in

7   view of Plaintiff's showing that Costco refused to identify potential collective action

8   members during discovery because such request was, *inter alia*, "premature." (Decl.

9   of Harris in Supp. of Reply ("Sec. Harris Decl."), Exh. 2 at 6-8.)  The FLSA was

10  enacted "to protect all covered workers from substandard wages and oppressive

11  working hours."  Adair v. City of Kirkland, 185 F.3d 1055, 1059 (9th Cir. 1999).

12  That purpose will be frustrated if Costco were to gain unfair advantage from its

13  refusal to identify potential class members.

14       The Court recognizes that courts sometimes bypass the first step when

15  discovery has been completed.  See Leuthold, 224 F.R.D. at 468.   However, the

16  Court believes that such an approach is inappropriate in this case due to the concerns

17  raised by the Court in Leuthold.  In Leuthold, defendants urged the court to bypass

18  the first-step because discovery was drawing to a close and the court had enough

19  evidence to make a factual determination under the second step.  The court denied

20  defendants' request and held that the court ought to begin with the notice question.

21  Id. at 467.  The court noted that "it is unclear to the court whether a complete factual

22  record has been developed and presented" and "the two-tier approach contemplates

23  progression through the notice stage before reaching the more rigorous inquiry

24  required to maintain the class."  Id.  The court then concluded:

25       [B]eginning with tier one of the analysis is the most equitable means of
         proceeding. . . . [S]hould the court bypass tier one entirely, some
26       potential plaintiffs might not become aware of the lawsuit and would
         not have an opportunity to join the suit.  And should the court proceed
27       to tier two on an unsettled factual record, the court might be deprived
         of crucial facts that would support plaintiffs' arguments for class
28       treatment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Id. at 468.  The Court agrees with Leuthold's rationale for not bypassing the first-step.  Because no formal solicitation appears to have taken place in this case and because Costco has refused to identify potential members of the collective action, bypassing the notice stage might deprive the Court of material information that would support Plaintiff's arguments for class treatment and would deprive potential class members of a meaningful opportunity to participate.  Id.  "Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice."  Id. at 467.

Much of Costco's arguments in opposing the § 216(b) Motion focused on the more stringent second tier analysis.  Among other things, Costco asserts that there is nothing unlawful about classifying receiving managers as "exempt" and expecting them to work without overtime pay.  (§ 216(b) Opp'n at 10.)  Costco further asserts that under the "executive exemption," an employee maybe exempt even if he spends most of his time on nonexempt work.  Id.  However, to ascertain whether the classification of receiving managers as "exempt" employees is in consonant with the spirit of the FLSA, the Court must examine whether their "primary duty" is the performance of exempt work.  29 C.F.R. § 541.700.  In doing so, the Court must consider:  "(1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; (4) and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  Id.  The question of whether the "executive exemption" affirmative defense applies is more appropriately addressed on the second tier analysis because the Court would then have the advantage of

having a complete factual record presented before it.[7]  See La Parne v. Monex Deposit Co., 2009 U.S. Dist. LEXIS 18789, at *10 (C.D. Cal. Mar. 9, 2009) ("Thus, although the Defendants assert the affirmative defense that Account Representatives are not even entitled to overtime pay because they are 'exempt,' the Court need not address the merits of that issue in conditionally certifying a class."); see also, Leuthold, 224 F.R.D. at 467 (noting that in a motion for decertification proceeding, the Court will have an opportunity to consider the defenses available to the defendants with respect to the individual plaintiffs).  Similarly, the Court need not reach Costco's arguments regarding the disparities in the factual employment situations of Plaintiff and other receiving managers inasmuch as they could be more appropriately addressed on a motion for decertification.  See id. at 468 (declining to address defendants' arguments relating to the second tier analysis and holding that those issues may be more appropriately addressed on a motion for decertification); Davis v. Westgate Planet Hollywood Las Vegas, LLC, 2009 U.S. Dist. LEXIS 5941, *33 (D. Nev. Jan. 12, 2009) ("The disparities in the factual employment situations of any plaintiffs who choose to opt in should be considered during the court's second tier analysis."); Edwards, 467 F. Supp. 2d at 990 (same).

In the notice stage, a court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Thiessen, 267 F.3d at 1102 (citation omitted).  Here, the allegations in the Complaint and the papers supporting the § 216(b) Motion show that Plaintiff and the proposed collective action members were subjected to a common unlawful policy or practice and were not compensated overtime for hours worked in excess of forty hours per week.  Therefore, the Court grants Plaintiff's § 216(b) Motion, and

---

[7]  Because Plaintiff submits that Costco has prevented him from conducting meaningful discovery with regard to the identity of potential class members, the Court simply cannot say that it has all the information necessary to make a determination as to whether the "executive exemption" applies.

1   conditionally certifies the proposed collective action for purposes of notifying the

2   proposed class members of the pendency of the suit.

3               **B.     Plaintiff's Rule 23 Motion Is Denied.**

4           Plaintiff also moves for Rule 23 class certification with respect to the state law

5   claims.  A Rule 23 class action may be maintained if: (1) the class is so numerous

6   that joinder of all members is impracticable; (2) there are questions of law or fact

7   common to the class; (3) the claims or defenses of the representative parties are

8   typical of the claims or defenses of the class; and (4) the representative parties will

9   fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

10  Additionally, a plaintiff must meet the requirements for at least one of the three types

11  of class actions enumerated in Rule 23(b).  The burden of satisfying the Rule 23

12  requirements is on the party seeking certification.  In re N. Dist. of Cal., Dalkon

13  Shield IUD Products Liability Litig., 693 F.2d 847, 854 (9th Cir. 1982); Edwards,

14  467 F. Supp. 2d at 991.  It is within the Court's discretion whether to certify a class.

15  Armstrong v. Davis, 275 F.3d 849, 867 (9th Cir. 2001).

16          In Plaintiff's Rule 23 Motion, he argues that the requirements of Rule 23(a),

17  Rule 23(b)(2), and Rule 23(b)(3) are met.  Regardless of whether the requirements

18  of Rule 23(a) are met, certification of the class either under Rule 23 (b)(2) or Rule

19  23(b)(3) is inappropriate.  For the reasons stated below, the Court denies Plaintiff's

20  Rule 23 Motion.

21              **1.     Certification under Rule 23(b)(2) Is Inappropriate.**

22          Certification under Rule 23(b)(2) is appropriate when a defendant "has acted

23  or refused to act on grounds that apply generally to the class, so that final injunctive

24  relief or corresponding declaratory relief is appropriate" with respect to the class as

25  a whole.  Here, Plaintiff asserts that Rule 23(b)(2) certification is proper, because

26  "Costco has maintained its illegal payment practices[] and will likely continue to

27  maintain its illegal payment practices" until the Court issues an injunction. (Rule 23

28  Mot. at 16.)  The Court disagrees.

Former employees lack standing to pursue injunctive relief to remedy an employer's ongoing unlawful business practices to the extent that there is no colorable claim that they will be reinstated.  See Walsh v. Nev. Dep't of Human Res., 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that former employee lacked standing to sue for injunctive relief because she would not likely benefit from the relief that she seeks).  Therefore, as a former employee, Plaintiff has no standing to pursue injunctive relief and consequently, cannot seek to certify a class under Rule 23(b)(2).  See Nelsen v. King County, 895 F.2d 1248, 1255 (9th Cir. 1990) (holding that it was not an abuse of discretion for the district court to refuse to certify a class under Rule 23(b)(2) after determining that the named plaintiffs possessed no standing to pursue injunctive relief); see also, Liberty Mut. Ins. Co. v. Tribco Constr. Co., 185 F.R.D. 533, 542 (N.D. Ill. 1999) (holding that certification under 23(b)(2) is improper where a party primarily seeks monetary relief); Jimenez v. Domino's Pizza, 238 F.R.D. 241, 250 (C.D. Cal. 2006) (holding that certification under 23(b)(2) is improper where plaintiffs are former employees and thus an injunction as to the former employer's behavior toward current employees cannot be plaintiffs' primary concern).

### 2.    Certification under Rule 23(b)(3) Is Also Inappropriate.

"Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975) (quoting Advisory Committee Note to Amended Rule 23).  Certification under Rule 23(b)(3) is appropriate if the court finds (1) that the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Plaintiff argues that both requirements of Rule 23(b)(3) are satisfied.  (Rule 23 Mot. at 17-

1  25.)  Costco argues that individual questions of fact predominate and a class action
2  is not a superior device to resolve the state law claims.  (Rule 23 Opp'n at 7-25.)

3      Regardless of whether common questions of law and fact predominate, the
4  Court finds that certifying a Rule 23 class action is not a superior means of
5  adjudicating the state law claims.  In determining whether a class action is superior,
6  courts must examine the following factors: (1) the class members' interests in
7  individually controlling the prosecution or defense of separate actions; (2) the extent
8  and nature of any litigation concerning the controversy already begun by or against
9  class members; (3) the desirability or undesirability of concentrating the litigation
10  of the claims in the particular forum; and (4) the likely difficulties in managing a
11  class action. Fed. R. Civ. P. 23(b)(3).  "Relevant to an examination of these factors
12  is a comparative evaluation of alternative methods of resolving the dispute."
13  Leuthold, 224 F.R.D. at 469; see also, Hanlon v. Chrysler Corp., 150 F.3d 1011,
14  1023 (9th Cir. 1998) (instructing that the superiority inquiry "necessarily involves
15  a comparative evaluation of alternative mechanisms of dispute resolution").

16      Here, a Rule 23 class action is not superior to other means of adjudicating the
17  state law claims.  If the Court were to grant both motions, the management of this
18  lawsuit would likely be difficult.  The Rule 23 notice will indicate that members are,
19  by default, opted-in unless they affirmatively opt-out, while the § 216(b) notice will
20  indicate that members are, by default, opted-out unless they affirmatively opt-in to
21  the action.  "If both a § 216(b) collective action and a Rule 23 class action were
22  allowed to proceed, confusion would result from requiring potential plaintiffs to both
23  opt-in and opt-out of the claims in the suit."  Edwards, 467 F. Supp. 2d at 992; see
24  also, Harden v. WIS Holding Corp., 2007 U.S. Dist. LEXIS 97608 (W.D. Mo. June
25  27, 2007) (dismissing plaintiff's state law claim, which sought to create a Rule 23
26  class action, in light of, among other things, the court's concern that confusion might
27  result if plaintiff is allowed to proceed with both a § 216(b) collective action that
28  requires class members to affirmatively opt-in and a Rule 23 class action that

14

1   requires class members to opt-out in order to avoid being bound by the judgment).

2       Moreover, an FLSA collective action allows individuals "to control their
3   participation in the action in a far more expeditious fashion than does a Rule 23 class
4   action." Leuthold, 224 F.R.D. at 469. FLSA allows claimants to opt-in to control
5   their participation, but requires no action from those who are not interested in the
6   action. In contrast, members of a Rule 23 class action are required to affirmatively
7   opt-out to avoid being bound by the judgment. As such, an FLSA collective action
8   is a more superior and efficient means of adjudicating both the FLSA claim and the
9   related state claims, because only those who are truly interested in the suit need to
10  act, while those who do not wish to join need not do anything.

11      Furthermore, allowing both a § 216(b) collective action and a Rule 23 class
12  action to proceed would frustrate the purpose of requiring plaintiffs to affirmatively
13  opt-in to § 216(b) collective actions. Edwards, 467 F. Supp. 2d at 993. In other
14  words, "the policy behind requiring FLSA plaintiffs to opt in to the class would
15  largely be thwarted if a plaintiff were permitted to back door the shoehorning in of
16  unnamed parties through the vehicle of calling upon similar state statutes that lack
17  such an opt-in requirement." Leuthold, 224 F.R.D. at 470 (internal quotations
18  omitted.)

19      In Leuthold, as in this case, plaintiffs moved to certify both a § 216(b)
20  collective action and a Rule 23 class action. The court in Leuthold held that because
21  plaintiffs had the option of bringing their pendent state law claims as part of the §
22  216(b) collective action, "[t]his alternative undercuts all of the Rule 23(b)(3)
23  superiority factors." Id. at 469. Similarly, a court in the Central District, relying on
24  Leuthold, denied a Rule 23 motion that was filed concurrent with a § 216(b) motion.
25  The Edwards court held that the FLSA collective action is a "more appropriate
26  vehicle to hear the state law claims of plaintiffs who are interested in pursuing such
27  claims." Id. at 993 (citing Leuthold, 224 F.R.D. at 470). The Court finds Leuthold
28  and Edwards persuasive and therefore, denies Plaintiff's Rule 23 motion.

Plaintiff contends that no confusion will result from the mailing of two notices. (Rule 23 Reply at 24-25.) In support of its contention, Plaintiff cites to Guzman v. VLM, Inc., 2008 U.S. Dist. LEXIS 15821, at *26 (E.D.N.Y. Mar. 2, 2008), where the court recognized that "there would be some possibility of confusion," but nonetheless opined that "this can be allayed through careful wording of the class notice." Plaintiff also cites to O'Brien v. Encotech Constr. Servs., 203 F.R.D. 346, 352 (N.D. Ill. 2001), where the court certified both a Rule 23 class action and a § 216(b) collective action. (Rule 23 Reply at 24.) The Court declines to follow this line of cases because it is not convinced that a Rule 23 class action is superior to an FLSA collective action, in light of the application of the relevant factors comprising the superiority test.

For the foregoing reasons, the Court finds that an FLSA collective action is a far more superior mechanism to adjudicate Plaintiff's state law claims.[8]

### C.   Evidentiary Objections

Both parties made numerous evidentiary objections.

### 1.   Plaintiff's Evidentiary Objections

Plaintiff objects to most of Costco's evidence because they are irrelevant. Moreover, Plaintiff asserts that Costco has failed to make appropriate initial disclosures per Rule 26(a) or supplement them in a timely manner per Rule 26(e). According to Plaintiff, Costco's July 21, 2008 initial disclosures failed to identify any of the individuals whose declarations are now being submitted by Costco in support of its opposition. (Pl.'s Objs. to Def.'s Evid. at 2; Sec. Harris Decl., Exh.

---

[8]   Costco argues that putative class members may pursue civil actions or administrative claims. (Rule 23 Opp'n at 24-25.) Moreover, Costco contends that the Court cannot certify a Rule 23 class action because the Rules Enabling Act "precludes class certification of a state-law claim for a plaintiff pursuing an FLSA collective action." (Id. at 3.) Given the Court's finding that a Rule 23 class action is not a superior alternative to adjudicate the state law claims, the Court need not reach these issues.

1.)[9]  These individuals are: (1) Cristina Banks; (2) Curtis Bell; (3) Claudette Black; (4) Paul Burke; (5) Mike Cox; (6) Craig Crandall; (7) Chris Darvey; (8) Randy Fitzgerald; (9) Patti Foster; (10) Mike Hanson; (11) Al Hernandez; (12) Juanita Houston; (13) Emma Keskeys; (14) Shanna Pena; (15) Scott Porter; (16) Kelly Revo; (17) Mike Reynolds; (18) Adam Shomer; (19) Jenine Smith; (20) Robert Throesch; and (21) Ben Ward.  (Pl.'s Objs. to Def.'s Evid. at 6-7.)  Plaintiff asks the exclusion of these witnesses, who were not disclosed until October 22, 2009– just *four days* before Costco filed its briefs in opposition to the instant motions; *over a month* after Plaintiff filed the instant motions, and *nearly five months* after the class discovery deadline. (Sec. Harris Decl., Exh. 3.)  Plaintiff contends that Costco "should not be permitted to play fast and loose with the discovery rules" by withholding information regarding the identities of the putative members while simultaneously arguing that Plaintiff should have contacted putative class members before certification and certification can be defeated by relying on evidence which were not previously disclosed by Costco in its initial disclosures.  (§ 216(b) Reply at 20.)

In addressing Plaintiff's timeliness argument, Costco concedes that it did not serve its supplemental disclosures to Plaintiff until October 22.  (Rusche Decl. in Supp. of Costco's Resp. to Pl.'s Evid. Objs. ("Sec. Rusche Decl."), ¶ 2, Exh. A.)  In these disclosures, Costco identified all previously undisclosed individuals from whom it submitted declarations, including Cristina Banks, its expert.  Costco claims that it did not disclose the identities of these individuals prior to October 22, because it did not know the extent to which it might need any of the declarations until after receiving Plaintiff's motions in September 2009.  (Costco's Resp. to Pl.'s Objs. to

---

[9] Plaintiff erroneously states that no evidence was presented from the witnesses Costco disclosed in its initial disclosures.  (Pl.'s Objs. to Def.'s Evid. at 7; Rule 23 Reply at 19.)  Together with its opposing briefs, Costco submitted a declaration from Greg Carter, who was identified in its initial disclosures.  (App. of Evid. In Supp. of Costco's Opp'n, Carter Decl.)

17

1  Def.'s Evid. at 2.)   Moreover, Costco claims that prior to interviewing these

2  declarants and obtaining their voluntary agreement to execute a declaration, it did not

3  know if it might (or could) use these individuals to support its opposition.  (<u>Id.</u>; <u>see</u>

4  <u>also</u>, Sec. Rusche Decl., ¶ 3.)

5          Rule 26(a)(1)(A)(I) provides in relevant part that unless an exemption applies,

6  "a party must, without awaiting a discovery request, provide to the other parties . .

7  . the name and, if known, the address and telephone number of each individual likely

8  to have discoverable information . . . that the disclosing party may use to support its

9  claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(I).   With regard to supplemental

10  disclosures, Rule 26(e)(1)(A) require that "[a] party who has made a disclosure under

11  Rule 26(a) . . . must supplement or correct its disclosure or response . . . *in a timely*

12  *manner* if the party learns that in some material respect the disclosure or response

13  is incomplete or incorrect, and if the additional or corrective information has not

14  otherwise been made known to the other parties during the discovery process or in

15  writing."  Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).   Rule 37(c)(1) provides that

16  "[i]f a party fails to provide information or identify a witness as required by Rule

17  26(a) or (e), the party is not allowed to use that information or witness to supply

18  evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially*

19  *justified* or is *harmless*."   Fed. R. Civ. P. 37 (emphasis added).   Whether Rule 37

20  sanctions should apply for breach of one's duty under Rule 26(e) is a matter properly

21  committed to the sound discretion of the district court.  <u>Phil Crowley Steel Corp. v.</u>

22  <u>Macomber, Inc.</u>, 601 F.2d 342, 344 (8th Cir. 1979).

23          Here, the Court finds that Costco's supplemental disclosures were untimely,

24  unsupported by substantial justification, and not harmless.   Costco's reasons for not

25  supplementing its initial disclosures until four days before its opposing briefs are due

26  are unpersuasive.   Costco submits the declarations to bolster its argument that

27  individual questions predominate, thereby making this case unsuitable for class

28  treatment; yet, Costco does not explain why the identity of these declarants only

became available in October 2009, nearly five months after the class discovery cut-off date.  Moreover, in its response to Plaintiff's interrogatories, dated March 25, 2009, Costco refused to identify any receiving managers employed in California because, *inter alia*, the request was "premature" and "seeks information [that is] neither relevant nor reasonably likely to lead to the discovery of admissible evidence."  (Sec. Harris Decl., Exh. 2 at 7.)  Yet, Costco now submits declarations of over a dozen receiving managers to advance its arguments.

Rule 26(a) requires that the disclosing party provide the contact information of each individual likely to have discoverable information "that the disclosing party *may* use to support its . . . defenses."  Fed. R. Civ. P. 26(a)(1)(A)(I) (emphasis added).  The Court is not convinced that Costco learned about the identity and/or relevance of potential witnesses it *may use* in opposing a class certification motion just days before it filed its opposition.  Moreover, the untimely disclosure is not harmless to Plaintiff because he can no longer conduct class-related discovery.  (Docket No. 24.)  Based on the foregoing, the Court strikes the declarations of the following individuals: Curtis Bell; Claudette Black; Paul Burke; Mike Cox; Craig Crandall; Chris Darvey; Randy Fitzgerald; Patti Foster; Mike Hanson; Al Hernandez; Juanita Houston; Emma Keskeys; Shanna Pena; Scott Porter; Kelly Revo; Mike Reynolds; Adam Shomer; Jenine Smith; Robert Throesch; and Ben Ward.  The Court finds that exclusion of the above-mentioned declarations is proper pursuant to Rule 37(c).  See Cargill Inc. v. Progressive Dairy Solutions, Inc., 2008 U.S. Dist. LEXIS 46972 (E.D. Cal. May 29, 2008).[10]

---

[10]  To support its claim that its supplemental disclosures were timely, Costco cites Kamar v. Radio Shack Corp., 2008 U.S. Dist. LEXIS 108507 (C.D. Cal. Oct. 8, 2008), where the court held that Radio Shack's disclosure of nineteen new declarants *three days* before its opposition to class certification was due did not warrant Rule 37(c) sanctions. In Kamar, 2008 U.S. Dist. LEXIS 108507, at *4, the court stated that "[t]he fact that Radio Shack identified a number of store managers to provide affidavits in opposition to class certification reflects nothing sinister about its prior

Plaintiff also seeks to exclude the deposition testimony of Costco's Senior Vice President, Bruce Greenwood, which was taken in Randall v. Costco, LASC Case No. BC293369, due to Costco's failure to include Greenwood in its initial disclosure. (Pl.'s Objs. to Def.'s Evid. at 7; App. of Evid. In Supp. of Costco's Opp'n, Rusche Decl. ("First Rusche Decl."), ¶ 4, Exh. C.) The Court has reviewed the excerpts of Greenwood's testimony and finds that it does not need to address Plaintiff's objections, because the evidence has no bearing on the Court's ultimate disposition of the instant motions.

Plaintiff also seeks to exclude the deposition testimony of Costco's VP of Operations, Shawn Parks, another witness who was not identified in Costco's initial disclosures. (Pl.'s Objs. to Def.'s Evid. at 7; First Rusche Decl., Exh. B.) Plaintiff's objection lacks merit because he himself relies on Parks' deposition testimony to support his assertions in the instant motions. (See First Harris Decl., Exh 27.) More

---

nondisclosure of these store managers' names." Kamar is factually distinguishable inasmuch as the Kamar court found that plaintiff was not prejudiced by the prior nondisclosure.

Courts have broad discretion to decide if a Rule 26(a) violation is justified or is harmless. Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir.), cert. denied, 537 U.S. 1066 (2002). In determining whether a party's failure to disclose is justified or harmless, a court should evaluate the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (citations omitted).

Here, Plaintiff's ability to depose the previously undisclosed witnesses is prejudiced as class discovery is closed. Costco erroneously asserts that Plaintiff may depose these declarants because the discovery cut-off is not until May 15, 2010. (Costco's Resp. to Pl.'s Objs. to Evid. at 5.) In fact, the general discovery cut-off is March 15, 2010. In any event, even if the Court were to accept these declarations as admissible evidence, they would not have any bearing on the Court's ultimate decision. The Court has reviewed each declaration and found these evidence irrelevant to the disposition of the instant motions.

importantly, it was Plaintiff's counsel who deposed Parks, so Plaintiff cannot argue that he was unfairly surprised, prejudiced, or harmed by Costco's failure to include Parks in its initial disclosures.  (See First Rusche Decl., ¶ 3.)  Based on the foregoing, the Court overrules Plaintiff's objection to the Parks' deposition testimony.

Plaintiff also objects to the entire declaration made by Cristina Banks, arguing that she was not timely disclosed as a witness and her "time-motion study" was based solely on observations that occurred more than twenty months after the case was filed.  (Pl.'s Objs. to Def.'s Evid. at 8-9.)  Plaintiff also claims that instead of offering a study that deals with the receiving manager position during the class period, i.e., 2004 through 2007, Banks studied activities of receiving managers in September and October 2009.  (§ 216(b) Reply at 20; see also, Banks Decl., Exh. 4.) Moreover, Plaintiff asserts that Banks' analysis is based only on activities of twenty-one persons during twenty-five days, and Costco has not produced all documents reviewed relied upon, and/or generated by Banks and her staff.  (Id. at 9.)

The Court finds Banks' research study too remote from the class period and fails to take into account the changes that would distinguish the findings in the study from the class period.  Banks' study was conducted to identify the tasks and activities actually performed by receiving managers at Costco warehouses in California. (Banks Decl., ¶ 52.)  Based on her analysis, Banks concluded that there is a considerable variation in the amount of time receiving managers spend in each task and in the total amount of time spent performing exempt work. (Id.)  However, other evidence submitted by Costco undercut the probative value of Banks' findings. For example, Kelly Revo, a Costco receiving manager who submitted a declaration in support of Costco's opposition, testifies that "receiving managers presently do not spend very much of their time reviewing or completing paperwork because much of the paperwork that used to be required has been streamlined or eliminated." (App. of Evid. In Supp. of Costco's Opp'n, Revo Decl., ¶ 21.)  Likewise, Al Hernandez,

21

1   another receiving manager, submitted a declaration which states, among other things,

2   that "[w]hen 'rapid receiving' was introduced to the warehouse, we eliminated one

3   of the Receiver positions. With rapid receiving, the Receiving Department is not

4   required to open and count every item delivered from Costco's Depot; and I only

5   have the higher-value items counted." (App. of Evid. In Supp. of Costco's Opp'n,

6   Hernandez Decl., ¶ 5.)  As Plaintiff correctly notes, the recent changes in the

7   operation of the Receiving Department may well account for the differences in the

8   job of receiving manager today in comparison with the requirements during the class

9   period, 2004 to 2007. (§ 216(b) Reply at 21 n.10.)  For the foregoing reasons, the

10  Court sustains Plaintiff's objections to Banks' declaration.

11  ### 2.   Costco's Evidentiary Objections

12  Costco objects to portions of the Harris Declaration in support of the motions

13  based on lack of foundation, hearsay, and best evidence rule.  (See generally,

14  Costco's Objs. to Decls. of Harris and Gikas at 2-28.)  The Court need not rule on

15  any of them insofar as the corresponding evidence are not relevant and have no

16  bearing on the Court's ultimate decision.

17  In addition, Costco objects to the Gikas Declaration.  Costo asserts that Dr.

18  Gikas' testimony lacks foundation and includes improper opinion testimony on

19  matters which Dr. Gikas is not qualified to testify as an expert.  The Court sustains

20  the objections for the reasons stated in Costco's papers. (Costco's Objs. to Decls.

21  of Harris and Gikas at 28-42.)

22  ### D.   Proposed FLSA Notice to Prospective Plaintiffs

23  As part of the § 216(b) Motion, Plaintiff asks the Court to approve his

24  proposed notice to be distributed to the class. (First Harris Decl., Exh. 32.)  In

25  addition, Plaintiff asks the Court to appoint a Claims Administrator and order Costco

26  to provide an electronic list of the FLSA collective action members so that the

27  Administrator may send the notice to them via first-class mail. (§ 216(b) Mot. at

28  17.)  The Court finds the production of the names and last-known addresses of

1   potential collective action members to a Claims Administrator appropriate.  See

2   Delgado,  2007 U.S. Dist. LEXIS 74731, at *10; La Parne, 2009 U.S. Dist. LEXIS

3   18789, at *12; Romero v. Prods. Dairy Foods, Inc., 235 F.R.D. 474, 493 (E.D. Cal.

4   2006).  The notice should be revised to reflect the Court's decision only to certify an

5   FLSA collective action.  In the course of revising the notice, the Court orders the

6   parties to meet and confer and attempt to agree on a joint proposed notice.  If the

7   parties fail to reach an agreement, the parties may each submit a proposed notice.

8   The proposed notice(s) must be submitted within five (5) days of the date of this

9   Order.  In the event that the parties do not submit a joint proposed notice, the parties

10  should file any objections to the proposed notices within ten (10) days of the date of

11  this order.

12                          **III.  CONCLUSION**

13          For the foregoing reasons, Plaintiff's motion to certify an FLSA collective

14  action, Docket No. 39, is GRANTED, although the Court's certification of such class

15  is conditional and is for purposes of notification only.  Plaintiffs' motion to certify

16  a Rule 23 class for related state law claims, Docket No. 40, is DENIED.

17          IT IS SO ORDERED.

18
    Dated:  March 31, 2010                      _____
19                                              Jacqueline H. Nguyen, Judge
20                                              United States District Court

21

22

23

24

25

26

27

28